# IN THE COURT OF APPEALS OF IOWA

No. 16-0733
Filed June 21, 2017

**HUNTING SOLUTIONS LIMITED LIABILITY COMPANY D/B/A EXTREME HUNTING SOLUTIONS,**
    Plaintiff-Appellant,

**vs.**

**WILLIAM L. KNIGHT,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Appanoose County, Daniel P. Wilson, Judge.

A plaintiff appeals the district court's denial of its unjust enrichment claim. **AFFIRMED.**

Bradley M. Grothe of Craver & Grothe, LLP, Centerville, for appellant.

Timothy J. Zarley and Joshua J. Conley of Zarley Law Firm, P.L.C., Des Moines, for appellee.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VOGEL, Judge.**

Hunting Solutions, L.L.C., d/b/a Extreme Hunting Solutions (EHS), filed suit against William Knight, asserting various causes of action arising from an unsuccessful business relationship. The district court rejected EHS's claims, along with Knight's counterclaims, following a bench trial. EHS asserts on appeal the district court was wrong to deny its unjust enrichment cause of action because it bestowed a benefit onto Knight by developing the prototype of his product and it should be compensated for that benefit. Knight asserts EHS conferred no benefit onto him because the product that EHS developed no longer complies with his patent. For the reasons stated below, we affirm the district court's decision.

## I. Background Facts and Proceedings.

Knight invented and patented a product he called a "Rattle Stick for Attacking Animals," which he envisioned would be used by hunters to attract deer by simulating the sound of the antlers of male deer engaged in a fight. The prototype also included a "grunt tube" with a reed in the handle of the unit, which could be used to vocalize a deer call. However, Knight lacked the resources to manufacture his product at an affordable price point to sell to consumers. In order to address this problem, Knight met with Randall Ferman, CEO of EHS, in April 2013.

Ferman asserted that, at this initial meeting, he informed Knight that, if EHS were to invest in the Rattle Stick, EHS must have the exclusive right to sell the product. Knight denies any such discussion occurred. The two moved forwarded with developing a prototype of Knight's Rattle Stick through a

company Ferman had used in the past. Knight provided Ferman with computer drawings of his patented product along with a video to demonstrate how it would be used. During the development of the prototype, Ferman wanted to change the grunt tube to a snort wheeze, a different vocalization call for attracting deer. Knight opposed the change but testified he "lost that argument," and a snort wheeze replaced the grunt tube in the prototype.

In August, Ferman contacted a mold company to create a mold so the product could be manufactured. Because EHS would be paying the $27,000 cost of the mold, Ferman obtained Knight's final approval on the appearance and function of the Rattle Stick before ordering the mold. At this time, Knight informed Ferman that, before Ferman ordered the mold, the two should work out a written agreement, but Ferman went ahead and ordered the mold without a written agreement.

In December, Ferman testified he had a meeting with Knight, and the two were on speaker phone with Ferman's attorney, giving him instructions to draft up the already agreed upon licensing agreement. Knight denied being present when Ferman contacted his attorney, and Ferman's attorney could not verify that anyone but Ferman was present during the phone call. Knight did remember a meeting in Ferman's office in December where Ferman provided him with a written licensing agreement that provided EHS with the exclusive right to sell the product. Knight testified this was the first time he had heard Ferman use the term "exclusive" with respect to selling the Rattle Stick. Knight took the agreement to his attorney to review.

Both Ferman and Knight attended a hunter's trade show in January to develop interest in the product. Marketing and packaging materials were created and paid for by EHS, and a few products were available for demonstration purposes from the mold company. Knight testified that, when they were at the trade show, Ferman was notified by his U.S. manufacturer that the mold created in China would not work for production in the United States because it did not have "cooling jets."

After returning from the trade show, Knight presented Ferman with a counteroffer agreement, prepared by Knight's attorney, that provided EHS's right to sell the product was nonexclusive. Ferman rejected this counteroffer, and the parties briefly discussed Ferman purchasing Knight's patent. But ultimately, the business relationship dissolved, and in May 2014, Ferman, on behalf of EHS, filed suit for the time and money invested in developing the Rattle Stick. Ferman estimated EHS spent nearly $35,000 for the prototype, mold, advertisements, and packaging. Ferman also sought recovery for the time he spent developing the product, which he estimated was worth approximately $30,000.

The parties waived a jury trial, and the matter was submitted to the court in February 2016. The court issued its decision on March 29, 2016, rejecting each of EHS's claims and Knight's counterclaims. With respect to EHS's unjust enrichment claim, the court concluded:

> Knight would be unjustly enriched were he to use the product developed in conjunction with EHS, after EHS's input of substantial sums of money, without reimbursement. No such action has occurred as Knight has not marketed the Rattle Stick product jointly developed with EHS. If that should occur in the future, EHS would be entitled to seek future compensation from Knight for use,

marketing, or profit from the Rattle Stick product. To this point, no such enrichment has been shown . . . .

EHS appeals.

## II. Scope and Standard of Review.

The claim of unjust enrichment is an equitable claim that is reviewed de novo. *See* Iowa R. App. P. 6.907; *Iowa Waste Sys., Inc. v. Buchanan Cty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000) ("As a claim for unjust enrichment is rooted solely in equitable principles, our review is de novo."). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

## III. Unjust Enrichment.

"The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001). It is an equitable principle that "serves as a basis for restitution." *Id.* The three elements a plaintiff must prove to recover under unjust enrichment are: "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Id.* at 154-55.

EHS asserts the district court incorrectly concluded Knight was not enriched by the work EHS did on the Rattle Stick. It asserts the benefit conferred was "the transformation of the Rattle Stick from a crude concept to a finished

marketable product that could be mass produced." It asserts the district court was incorrect to focus on Knight's ability to be profitable from the services EHS provided rather than focus on the value of the services provided. *See Catipovic v. Turley*, 68 F. Supp. 3d 983, 997 (N.D. Iowa 2014) (noting the measure of damages for unjust enrichment is not the defendant's profits but the value of what the plaintiff provided).

In noting that no unjust enrichment was proven, the district court was not concerned with Knight's lack of profitability but was focused on whether Knight was benefited by what EHS provided. Knight testified the product actually produced by EHS does not comply with his patent due to the substitution of the grunt tube with the snort wheeze,[1] and he further testified the mold EHS paid for is useless without cooling jets. Knight claims he has not been benefited by EHS's actions and was only harmed by disclosing proprietary details of his patented product to EHS, who can now compete against him in the market place with the snort wheeze modification. Thus, Knight claims EHS has the ability to

---

[1] Claim 1 of Knight's patent provided:
      1. A rattle stick for attracting animals comprising:
          an elongated member having at least one knob on an outer surface, and a sleeve that fits over the elongated member and has at least one knob on an inner surface that engages the knob on the outer surface of the elongated member when the sleeve is moved over the elongated member;
          a bore extending through the elongated member from one end to the opposite end
          wherein the elongated member has a handle at one end;
          wherein the handle has an outwardly extending flange; and
          *wherein a grunt reed insert is positioned within the bore of the handle.*
(Emphasis added.) "The claim sets out the scope of the invention. The patent law requires that the patent application include 'one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.'" *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 306 (Iowa 1998) (quoting 35 U.S.C. § 112 (1994)).

recoup its investment through the sale of the product developed, would owe no royalty payment to Knight, and Knight can do nothing to stop EHS.

Upon our review of the record, we agree with the district court that EHS has not conferred a benefit upon Knight such that it would be unjust for Knight to retain that benefit without compensating EHS. Despite the expenditure of money and time by EHS, Knight is no further along in manufacturing his patented product, and EHS has the ability to produce and sell the product it developed in order to recoup its expenses. As the district court noted, if, in the future, Knight realizes a benefit from the work provided by EHS on the Rattle Stick, then recovery may be warranted. Because EHS is unable to prove such benefit has been conferred, we affirm the decision of the district court.

**AFFIRMED.**